## 20296

In the Matter of W. Richard JAMES, Respondent.
(229 S. E. (2d) 594)

*Messrs. Daniel R. McLeod, Atty. Gen., and A. Camden Lewis, Asst. Atty. Gen.,* of Columbia, *for Complainant.*

*Messrs. Kermit S. King,* of Columbia, *and Julius B. Aiken,* of Greenville, *for Respondent.*

October 27, 1976.

*Per Curiam:*

This matter is before the court for review of the recommendations of the Board of Commissioners on Grievances and Discipline (Board) that respondent, W. Richard James, an attorney, be publicly reprimanded because of professional misconduct tending to pollute the administration of justice and bring the courts and the legal profession into disrepute. The Board concurred in the findings of misconduct made by the Hearing Panel (Panel), but voted to recommend discipline by public reprimand instead of by indefinite suspension as recommended by the Panel.

The present charges and findings of misconduct grew out of the handling of the estate of William L. Farmer, deceased, by respondent. Respondent was named executor of the Farmer will, and on January 19, 1973 wrote to the Greenville office of Provident Life and Accident Insurance Company advising them that he was the executor of the estate of Mr. Farmer and requested information relative to an insurance policy on the life of the deceased in the amount of $31,000.00. A representative of the Company replied by return mail, affirming the existence of the insurance policy in the above amount, and enclosed three (3) forms to be completed and returned, without accepting or denying liability. One of these forms was an attending physician's statement.

On May 25, 1973, Mr. David Armstrong, respondent's law partner at the time, returned to the insurance company two of the three (3) forms previously requested, but sent a death certificate in lieu of the attending physician's statement. On this same date, a complaint against the insurance company was drafted, showing "W. Richard James, Executor of the Estate of William L. Farmer, deceased," as plaintiff,

and David D. Armstrong, respondent's law partner, as attorney for the plaintiff. The original of this complaint was later filed in the United States District Court, District of South Carolina, Greenville Division, on July 26, 1973.

The letter to the insurance company, with the enclosures, was apparently received by the company on May 29th and answered on that date. In this letter the company acknowledged receipt of two of the three (3) forms but called attention to the fact, with reference to the third form, that "it is essential that we have the attending physician's statement completed because the claim is being considered under waiver of premium because of total disability prior to age 60" etc. Thereafter, on June 12th, respondent sent the attending physician's form to the physician with the request that it be completed and returned to the insurance company. This form was allegedly sent to the company from the physician's office on June 27th. On July 26th, the complaint prepared on May 25th, two months before, was filed by Mr. Armstrong as attorney for respondent.

The insurance company, still contending that the attending physician's report had not been filed, wrote to Mr. Armstrong on August 6th requesting that such form be completed. On August 20th an extension of time was granted to the insurance company to file its answer and on September 10th Mr. Armstrong sent the completed physician's statement to the company. The company then, three (3) days later, on September 13th, paid the face amount of the policy.

The litigation was ended by an order of the United States District Court dated September 26, 1973. *Plaintiff's attorney* was awarded a fee of one-third, or $10,333.33, to which respondent consented as executor, along with the estate beneficiaries. There was no indication of any of the pleadings or documents that respondent and Mr. Armstrong were law partners and that respondent was to receive two-thirds of the fee resulting from the litigation.

Thereafter, there was deposited to the account of James (respondent) and Armstrong, attorneys-at-law, the sum of $10,333.33, realized as the attorney's fee in the litigation, of which respondent personally received two-thirds.

The Probate Court records reflect that respondent received a fee as executor of $1,485.06, but the records fail to show that he also received two-thirds of the attorney's fee realized from the litigation.

The record fully sustains the conclusion and findings of the Board that respondent failed, as executor, to make good faith attempts to collect on the policy of insurance without litigation, and deliberately failed to reveal his dual capacity as executor and attorney in the ensuing litigation.

The Panel correctly outlined the duties of respondent as follows:

"In order to act properly in his capacity as executor/lawyer respondent would have to have (1) determined in good benefits due, (2) explained this fact fully and disclosed the that the insurance company would not voluntarily pay the faith, after exhausting all nonlitigative means (as executor), fee arrangement with the estate beneficiaries, (3) obtained the consent of the estate beneficiaries to act in the dual capacity, and (4) fully disclosed all relevant facts to the court approving his fee and the court approving the accounting rendered."

Both the Panel and the Board, upon review, concluded that the evidence convincingly showed that respondent fulfilled none of the foregoing essential duties, and that he violated his fiduciary duty as executor of the estate of William L. Farmer by failing to exhaust all reasonable means to collect the insurance due the estate without litigation and his duty to the beneficiaries of the estate and the courts to disclose his dual relationship as executor and attorney.

The evidence sustains the finding that respondent deliberately failed to complete the forms necessary to collect the

insurance until after litigation had been instituted and that this was done in order to mulct the estate of additional fees.

The evidence also sustains the finding that respondent failed to disclose his dual capacity as executor and attorney to the courts. The record shows that respondent's name nowhere appears upon the record as counsel for the estate. The record does show *only* respondent's representation of the estate as executor. It is undisputed, however, that respondent actually received two-thirds of the attorney's fee allowed by the United States District Court from the insurance proceeds and that respondent, in his fiduciary capacity as executor consented to the payment of that fee to the attorney of record, without ever disclosing to the court that he was, in fact, consenting, and thereby procuring the setting of his own fee.

Further evidence of the deliberate concealment by respondent of his dual capacity as executor and attorney is found in the Probate records of the estate. These records show that the executor received only $20,666.67 from the life insurance policy instead of $31,000.00 actually paid by the insurance company. Nowhere is there any mention or reference to the fact that respondent, the executor of the estate, received, as he did, the sum of approximately $7,000.00 as an attorney's fee.

Respondent owed the highest fiduciary responsibility to the estate that he represented and a duty to speak the truth to the courts. His actions in subjecting his trust to unnecessary expenses of litigation and his deliberate and deceitful failure to disclose to the court his dual capacity constituted flagrant professional misconduct. We agree with the Panel that respondent's conduct warrants indefinite suspension from the practice of law.

It is accordingly ordered that respondent is hereby indefinitely suspended from the practice of law and shall within five (5) days surrender his certificate to practice law to the Clerk of this Court for cancellation.